Lyon, special Judge,
delivered the opinion of the court.
This action of ejectment was tried in the Circuit Court for Claiborne county, where there was a verdict and judgment for the defendant, from which the lessor of the plaintiff appealed to this court. Several errors are now assigned to the action of the court below.
1. This case was before this court on a former occasion, and on the trial, the plaintiff produced and offered to read the bill of exceptions to the jury which had been taken at the former trial. The Circuit Judge, however, refused to permit the bill of exceptions to be read, and it is now insisted that this is erroneous. The argument to sustain this exception is, that inasmuch, as the decision of this court was founded on the facts presented in that bill of exceptions, it was necessary that the jury should understand upon what the opinion of the court was predicated, in order that they might comprehend more fully its bearings on the case before them. There is no foundation for this argument. The jury must in all cases decide upon the facts presented to them in each case, and it is the province of the court to expound to them the law arising on these facts. It by no means follows that the same state of facts must be presented at every trial of the same cause, and as the facts may vary, so must the law be applied to meet the varying aspects which the case may assume.
2. The Circuit Court instructed the jury that “if Hugh Gilmore obtained Massengill’s leave to extend his fence at the angle B. F. E., on the annexed plat, that the possession of Hugh Gilmore under Massengill, would not avail Massengill any further than to the extent of his actual inclosure.” If a *114 tenant lease land by prescribed metes and bounds, the possession will not avail the landlord further than to the extent of the boundary thus claimed and held by the tenant. If he rent a farm or tract of land, and occupy but a portion thereof, then the possession of a part is the possession of the whole. The possession of a tenant cannot avail the landlord to any greater extent than it would the tenant if he were claiming and holding for himself. 9 Yer. 470-1, 10 Peters R. 444. This is substantially what the Circuit Judge says, and there is therefore no error in his charge on this point.
3. The Judge further told the jury, that although “Boyles’ paper title might only have extended to the creek, and so as to include the saw mill and race, yet, in order to make out a better outstanding title in a third person, either by the presumption of a grant or by the statute of limitations, Boyles’, although a naked trespasser as to part of the land, might show a twenty or a seven years’ possession by the Gilmores outside of the Boyles’ paper title, and outside of Boyles’ own possession, so as to protect him (Boyles) in the possession of that part, although the possession of the Gilmores might be under a younger paper title (if the boundaries covered the possession of Boyles) and although Boyles had no paper title to the part so possessed by the Gilmores.”
Now, we can only understand his Honor, the Circuit Judge, in this part of his charge to mean, that the defendant, although a trespasser, as to a part of the land which he possessed, might protect himself by setting up an outstanding title in the Gilmores, though that outstanding title were younger than the title of the lessor of the plaintiff — provided it was connected with such a possession as would make it effectual for defence to the Gilmores.
In this point of view, there is no error in the charge — the rest may be regarded as surplusage.
We arrive at this conclusion the more readily, because we *115 are satisfied, that the result of this case cannot be different upon the facts shown in this record.
This case, as before stated, was before this court on a foi*-mer occasion, and the decision is reported in 4th Hum. 205. The principles of law there laid down, we entirely concur in. But, we think, the application of those principles to the facts of the case as now presented, is probably too stringently applied. The grant to Rhodes was issued in 1793, and calls for land to lie on both sides of Buffalo creek, beginning at three points and running different courses to a chesnut on the north side of the creek, thence down the creek, a south course, one hundred poles to a beech on the bank of the river below the mouth of the creek. Now, it must observed, that there is no call for the meanders of the creek on this line, although that description of call is to be found on other lines of this grant. The call also for the beech on the bank of the river below the mouth of the creek, necessarily compels a departure from the creek at some point in its course, in order to reach the beech corner on the river, which is on the south side of the creek. There is also proof to show, that the line south, 17 degrees west from the chesnut to the beech, was marked and recognized by Massengill at an early period, as the true line of the Rhodes survey.
Upon the whole, we affirm the judgment.